UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| In re: | Case No. 21-44017-357 |
|---|---|
| JESSE DAKOTA YOUNT, | Chapter 7 |
| Debtor. | |

### MEMORANDUM OPINION

Debtor Jesse Dakota Yount has filed a Motion for Sanctions for Violation of the Discharge Injunction (Doc. 76) (the "Motion"). The Motion concerns litigation brought by Dierdre Pickens against the Debtor in Missouri state court. Pickens opposes the Motion. For the reasons that follow, I will deny the Motion, with leave for Yount to renew it in certain respects after conclusion of related proceedings, and deny Pickens' cross-motion for sanctions.

I.     Factual and Procedural Background

The Debtor has been engaged in litigation with Pickens in state court for more than four years. The parties agree that Pickens' son, Christopher, died of a fentanyl overdose while he was at the Debtor's home in August 2017. The Debtor's responsibility, if any, for Christopher's death is a matter of considerable dispute. I have not received any evidence on the merits of the state-court litigation, and of course I express no opinion on the Debtor's potential liability to Pickens.

The procedural histories of three interrelated proceedings—the litigation in state court, the Debtor's bankruptcy case, and Pickens' adversary proceeding in this Court—are largely, if not entirely, undisputed. Because these developments are fundamental to the disposition of the Motion, I describe them in some detail here.

Pickens filed suit in the Circuit Court of St. Louis County on December 5, 2018. In her original petition, she named the Debtor and both of his parents as defendants. Following several amendments, Pickens' claims included negligence, assault, battery, and intentional infliction of emotional distress. She dismissed her claims against the Debtor's parents in April

2020. Later that year, the homeowners' insurance company that was providing a defense to the Debtor obtained a declaratory judgment that the claims were not covered by its policy.[1]

The case narrowed in early 2021, when Pickens dismissed her assault and battery claims without prejudice. The state court granted Yount summary judgment on the emotional-distress claim, leaving only the negligence claim to be tried to a jury beginning on November 29, 2021. But the Debtor's counsel was authorized to withdraw from the case in September, leaving him without representation.

The Debtor commenced this bankruptcy case on November 1, 2021, seeking relief under Chapter 13 of the Bankruptcy Code. The case was assigned to Judge Schermer. Throughout much of 2022, the Debtor attempted to confirm a Chapter 13 plan, while Pickens sought relief from the automatic stay to resume the litigation in state court for the purpose of liquidating her claim against the Debtor. The Debtor ultimately converted his case to Chapter 7 and consented to Pickens' stay-relief motion as it concerned the negligence claim. The Court thus granted Pickens stay relief on October 26, 2022, authorizing her to liquidate her claim in state court, but not to collect any judgment. The order also authorized Pickens to amend her petition to assert additional claims arising out of the operative facts underlying the negligence claim.

The Chapter 7 trustee has not identified any assets for distribution to unsecured creditors.

Pickens received leave to amend her petition in state court and filed a third amended petition on December 8, 2022. The new petition reasserts claims for assault and battery, along with the previously pending claim for negligence. The court set the case for trial on March 27, 2023. The Debtor's bankruptcy counsel entered an appearance on his behalf in state court and filed a motion for summary judgment on the assault and battery claims. That motion remains pending.

Meanwhile, Pickens faced a deadline in this Court to seek a determination that her claim against the Debtor is not dischargeable. She filed a timely complaint on December 14, 2022, commencing Adversary Proceeding No. 22-4054, which was assigned to Judge Surratt-States. Pickens' complaint alleges that her claim is not subject to discharge because it is "for willful and malicious injury by the debtor." 11 U.S.C. § 523(a)(6). In particular, she alleges that the Debtor willfully and maliciously injured Christopher by some combination of

---

[1] Pickens believes, and the Debtor denies, that one or more additional insurance policies may provide coverage for the negligence claim. I do not have any basis on which to determine which party is correct.

possessing, controlling, distributing, or administering fentanyl, or by intentionally failing to timely summon emergency personnel in response to his overdose. She does not specifically identify which of the three causes of action now pending in state court involve willful and malicious injury, but all of her substantive allegations describe intentional conduct, and none refer to negligence, mistake, or similar concepts. Judge Surratt-States set the adversary proceeding for trial on February 28, 2023.

The Debtor's Chapter 7 case was reassigned to me on Judge Schermer's retirement in January 2023. In the absence of any complaint seeking to deny the Debtor a discharge in its entirety, I entered an order granting him a discharge on February 14, 2023. Consistent with the Court's standard form, the discharge order identified several categories of claims that are not discharged, including "[d]ebts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged."

Three days after the discharge, Pickens requested that Judge Surratt-States continue the trial in the adversary proceeding "to the next available trial date after May 15, 2023." In support of her motion, Pickens argued that the question of dischargeability is "not ripe for adjudication" until after the state court decides the merits of Pickens' claims. She did not differentiate among the three claims now pending in state court. The Debtor opposed the motion, arguing in essence that judicial economy favors a prompt trial of the dischargeability issues, because if the parties proceed first in state court, they will have to litigate further in the adversary proceeding, at least to the extent of motions for summary judgment, and perhaps a full trial. The Debtor also pointed out that "the discharge was entered in the underlying bankruptcy on February 14, 2023."

By order entered on February 28, 2023, Judge Surratt-States granted Pickens' motion, rescheduled the trial in the adversary proceeding to May 23, 2023, and reset pre-trial deadlines accordingly.

Three days later, Pickens filed her proposed jury instructions in the state court. These include a verdict director for the negligence claim (based on MAI 20.01), definitions of "negligence" and "ordinary care" (MAI 11.02 and 11.05), and a punitive-damages instruction designed for use with negligence claims (MAI 10.02). The negligence verdict director reflects a somewhat narrow theory of the claim: it asks the jury to determine that the Debtor undertook to render services after he discovered that Christopher was experiencing an overdose, and "he failed to exercise reasonable care" in that undertaking. Pickens also submitted a proposed form of general verdict, which asks the jury to find in favor of one party or the other on "the claim of plaintiff Deirdre Pickens for wrongful death" and, if they find in favor of Pickens, to identify the amounts of compensatory and punitive damages.

The Debtor filed the Motion on March 8, 2023, followed by a supporting memorandum on March 13. Pickens filed her Response and Objection to the Motion on March 17, which includes a cross-motion for sanctions under Federal Rule of Bankruptcy Procedure 9011. The Debtor replied on March 20. In light of the imminent trial date in state court, I heard arguments on the Motion on March 22, 2023.[2]

## II. Analysis

### A. Assault and Battery Claims

There is no question that Pickens was authorized to proceed with all three of her claims in state court before the entry of the discharge. Judge Schermer specifically granted her relief from the automatic stay to prosecute the case, including any claims added by amendment, with the qualification that she was not authorized to collect any judgment.

The stay expired when the Debtor received his discharge. 11 U.S.C. § 362(c)(2)(C). Among other things, a discharge prohibits a creditor from continuing an action to collect or recover a debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). Absent more—for example, if Pickens had taken no action in bankruptcy court and resumed the litigation after the discharge—she would clearly be in violation of the discharge injunction. There is more here, however.

First, as noted earlier, Pickens sought and obtained relief from the automatic stay to liquidate her claims, but not to collect. Second, she filed a timely adversary proceeding requesting that her claims be excepted from the discharge pursuant to Section 523(a)(6). Third, the discharge order itself contemplates that there may be claims that the Court "will decide … are not discharged." And fourth, Pickens sought and was granted a delay of the trial of the adversary proceeding, despite the Debtor's argument that the discharge had recently been issued, to allow the state-court litigation to proceed.

Pickens argues that her timely filing of an adversary proceeding is sufficient to permit her to proceed in state court without violating the discharge injunction (or, alternatively, that it is sufficient when considered together with the earlier order granting her relief from the automatic stay). This contention turns on the language of Section 523(c) of the Bankruptcy Code, which is not a model of clarity. It states that, except in irrelevant circumstances, "the debtor shall be discharged from a debt of a kind specified in paragraph … (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice

---

[2] The parties learned and reported to the Court after the hearing that the case is no longer scheduled for trial on March 27.

and a hearing, the court determines such debt to be excepted from discharge under paragraph … (6)." 11 U.S.C. § 523(c). There is no consensus on how this language applies to a debt that is the subject of a pending Section 523(a) adversary proceeding when the debtor receives a discharge.

For example, the Bankruptcy Appellate Panel of the Ninth Circuit has interpreted Section 523(c) to mean that "a debt is not discharged if a timely complaint is filed objecting to discharge of that debt … unless and until the bankruptcy court denies the objection." *In re Kvassay*, No. 15-1420, 2016 WL 5845672, at *8 (B.A.P. 9th Cir. 2016). On the other hand, the Bankruptcy Appellate Panel of the Tenth Circuit has construed Section 523(c) to mean that "debts are 'presumptively discharged' until the bankruptcy court makes a determination regarding dischargeability." *In re Eastburg*, 447 B.R. 624, 632 (B.A.P. 10th Cir. 2011) (emphasis omitted).

Ultimately, I do not need to decide whether Pickens' assault and battery claims currently are discharged but may be excepted later, as in *Eastburg*, or are excepted now but may be discharged later, as in *Kvassay*. Nor do I need to decide whether the uncertainty surrounding this issue is alone sufficient to protect Pickens from sanctions under the "fair ground of doubt" standard of *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019).

That is so because even those courts that disagree with the creditor-friendly interpretation of Section 523(c) in *Kvassay* generally agree that a bankruptcy court may modify or grant relief from the discharge to allow a particular case to proceed in another forum before the bankruptcy court resolves a Section 523(a) adversary proceeding.[3] *See Eastburg*, 447 B.R. at 632-33 (affirming bankruptcy court's determination that creditor could proceed in state court because creditor alternatively requested modification of discharge injunction); *In re Pacheco*, 616 B.R. 126, 138-39 (Bankr. D.N.M. 2020) (modifying discharge to permit state court to rule on pending motion); *In re Robben,* 562 B.R. 469, 477 (Bankr. D. Kan. 2017) (modifying discharge injunction to allow certain claims to proceed in state court); *In re Mauro*, No. 18-107, 2018 WL 4786369, at *2 (Bankr. D.D.C. 2018) (modifying discharge injunction to allow creditor to obtain final judgment in superior court).

The Debtor relies principally on *In re Munoz*, 287 B.R. 546 (B.A.P. 9th Cir. 2002), for the proposition that Section 524 "leaves no discretion in the court to 'modify' the discharge

---

[3] I am referring here to a procedural modification of the discharge to address the order of proceedings in multiple courts, all in an effort to reach the appropriate determination whether a particular claim is discharged or not. I need not, and do not, address whether a bankruptcy court may *substantively* modify the discharge.

injunction." *Id.* at 553. The panel majority reached this conclusion because of the "statutory nature of the injunction," which is fixed by Congress rather than crafted by a judge. *Id.* at 552. This logic has been undermined by the Supreme Court's recent statement that the discharge statute brings with it "the 'old soil' that has long governed how courts enforce injunctions." *Taggart*, 139 S. Ct. at 1801. In any event, I find more persuasive the separate concurrence of Judge Montali, who pointed out that the discharge did not apply to the proceedings at issue at all and recognized that "nothing in the Bankruptcy Code prohibits the court from modifying the injunction." *Munoz*, 287 B.R. at 556 & n.10 (Montali, J., concurring).

Judge Surratt-States has modified the discharge injunction here. Despite the Debtor's objection, in which he pointed out that he had received a discharge, Judge Surratt-States granted Pickens' motion requesting that the trial in the adversary proceeding be rescheduled so that Pickens could first proceed to judgment in state court.[4] I disagree with the Debtor's argument that any modification of the discharge requires particular language or unusual specificity. The most reasonable interpretation of the order is that Pickens was authorized to do what she proposed to do: proceed with the litigation in state court to develop a record that would permit Judge Surratt-States to streamline the adversary proceeding.

As so modified, the discharge injunction permits Pickens to proceed with her assault and battery claims in state court. There is, therefore, no basis for the imposition of sanctions as to her continued litigation of these claims.

### B. Negligence Claim

The reasoning above applies only to the extent that a plaintiff's claim satisfies three predicates. First, the elements of the claim must align with one or more of the exceptions to discharge under Sections 523(a)(2), (4), or (6). *See Robben*, 562 B.R. at 479 (noting that plaintiff was authorized to pursue fewer claims than under previous stay-relief order). Second, the claim must be encompassed by the Section 523(a) adversary proceeding, the resolution of which the bankruptcy court decides to defer. And third, the bankruptcy court's modification of the discharge must address, explicitly or implicitly, the claim. As presently packaged in state court, Pickens' negligence claim does not satisfy any of these criteria.

---

[4] At the hearing on the Motion, counsel agreed that the Debtor eventually consented to the continuance of the trial in the adversary proceeding. I do not believe that the Debtor's consent affects the question before me, at least in part because the discharge is effective "whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The important action here was the Court's reordering of the proceedings, with full knowledge that the discharge had already been issued.

Generally speaking, a negligence claim involves neither willful nor malicious injury, and thus it does not fall within the exception to discharge under Section 523(a)(6). *Kawaauhau v. Geiger* establishes that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." 523 U.S. 57, 64 (1998). Rather, "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* at 61. Pickens' proposed verdict director turns on the proposition that the Debtor "failed to exercise reasonable care" when he discovered that Christopher had overdosed and undertook to assist him. That is the stuff of common-law negligence, not a deliberate or intentional injury. *See generally Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc.*, 700 S.W.2d 426, 432-33 (Mo. 1985).

Pickens' adversary complaint also is phrased in terms of intentional conduct, not negligence. This is appropriate, because Pickens cannot meet the Section 523(a)(6) exception standard with respect to a claim based on negligent conduct. But it also means that Pickens' negligence claim, as currently formulated, is not at issue in the adversary proceeding.

For two reasons, Judge Surratt-States' order rescheduling the trial of the adversary proceeding cannot reasonably be interpreted as modifying the discharge injunction as to the negligence claim. The first derives directly from the points just above: because the negligence claim is not going to be excepted from discharge, and Pickens has not asked for it to be excepted from discharge, an order designed to schedule the adversary proceeding after the state-court trial cannot be construed as modifying the discharge as to that claim. But the rescheduling order also should be interpreted in light of Pickens' rationale for seeking a continuance: because the adversary proceeding was "not ripe for adjudication" until after the state-court litigation proceeded to judgment. Pickens was thus proposing to return to bankruptcy court with useful information that would advance the resolution of the adversary proceeding. Jury verdicts on the assault and battery claims would accomplish that goal; even if they would not lead directly to summary judgment on the basis of issue preclusion, they would significantly narrow the parties' arguments. A jury verdict on the negligence claim would not advance the resolution of the adversary proceeding at all.[5]

Pickens' principal argument to the contrary is that claim preclusion does not apply in dischargeability litigation. As a consequence, she argues, she may prevail in state court on a

---

[5] This problem is likely to be compounded by Pickens' proposed verdict form, which would have the jury return a single verdict on all three of her tort claims. If Judge Surratt-States cannot tell from the state-court record what the jury decided, it is not likely that the adversary proceeding will be any more ripe for decision in May than it would have been in February.

claim involving something less than an intentional injury and then convince the bankruptcy court that the circumstances nevertheless involved willful and malicious injury. The general principle Pickens advances is correct: the bankruptcy court "is not confined to a review of the judgment and record in the prior state-court proceedings." *Brown v. Felsen*, 442 U.S. 127, 138-39 (1979). But *Brown* involved *pre-petition* litigation in state court. The Supreme Court recognized that it is not appropriate to expect state courts to address questions fundamental to dischargeability "at a stage when they are not directly in issue and neither party has a full incentive to litigate them." *Id.* at 134. By contrast, the Court said, the creditor's claims of deceit, fraud, and conversion were "now, for the first time, squarely in issue" in the dischargeability dispute, and the bankruptcy court should be permitted to consider them. *Id.* at 138.

This reasoning does not translate to the context of this case. Pickens knows exactly what is at stake—she must demonstrate willful and malicious injury or recover nothing—and thus has every incentive to try to make that showing before her preferred factfinder, a state-court jury. Nothing in *Brown* suggests that a creditor who has been permitted to liquidate a claim in state court post-petition should be permitted a second bite at the apple if the state court's judgment is inconsistent with willful and malicious conduct. Nor is there an obvious limiting principle here. If a creditor may litigate a plainly dischargeable claim post-petition as a springboard to a second determination by a bankruptcy judge that the surrounding circumstances show non-dischargeable conduct, a rational creditor will identify a claim that is relatively easy to establish (perhaps one involving strict liability) and generates relatively large damages (perhaps treble or punitive damages), all in an effort to put additional pressure on the debtor. Such a scenario is inconsistent with the fresh start contemplated by the discharge. *See generally Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) (bankruptcy provides "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt").

In any event, whether Pickens can proceed on her negligence claim turns on whether she *has* been granted temporary relief from the discharge injunction, not on whether she *could have* been granted such relief. For the reasons discussed above, she has not. In particular, pursuit of the negligence claim is not consistent with Pickens' rationale for rescheduling the trial of the adversary proceeding—that is, to render it "ripe for adjudication." A state-court judgment in Pickens' favor on the negligence claim would require Judge Surratt-States to consider substantial extraneous evidence before she could possibly recast it as a debt for willful and malicious injury, and she could have done that on the original trial date in February. Interpreting the modification in the context of Pickens' request, I do not believe that she has been authorized to proceed in that fashion.

In short, because the negligence claim, as currently formulated, does not meet the standard of Section 523(a)(6), is not a subject of Pickens' adversary proceeding, and was not affected by the discharge modification, that claim was discharged on February 14, 2023, and Pickens may not pursue it further.

This does not necessarily mean that Pickens cannot present *any* claim arising out of her general theory that the Debtor either did not help or did not sufficiently help Christopher as he was overdosing. In the adversary proceeding, for example, Pickens alleges that the Debtor "intentionally failed to timely summon emergency medical response personnel." If Pickens can develop a theory of recovery that (1) involves willful and malicious conduct, (2) is actionable under Missouri law, and (3) can be introduced at this late stage of the litigation, then the discharge injunction, as modified, would not preclude her from presenting the theory at the upcoming trial. *But see In re Patch*, 526 F.3d 1176, 1181-82 (8th Cir. 2008) (questioning, but not deciding, "whether a debtor's breach of a legal duty to act can ever constitute a 'willful … injury'"). The Debtor's counsel acknowledged at the hearing that the Motion targets the negligence claim as it is currently presented, and he may need to address amendments or variations as the case proceeds in state court.

It also may be possible for Pickens to pursue the negligence claim solely for the purpose of establishing the liability of someone other than the Debtor. *See* 11 U.S.C. § 524(a)(2) (enjoining suits to collect "a personal liability of the debtor"); *In re Christian*, 180 B.R. 548, 550 (Bankr. E.D. Mo. 1995) (holding that creditor may continue suit against debtor "so long as the purpose of such an action is to obtain satisfaction of its claim from entities other than the debtor"); *Robben*, 562 B.R. at 480 (stating that plaintiff may proceed against debtor as nominal defendant). At the hearing, Pickens' counsel stated that a negligence judgment could be important to a claim for insurance (if there is any) or a potential malpractice claim against the Debtor's former lawyer. But the negligence claim is not limited to those purposes at present, and thus it implicates the Debtor's personal liability.

### III.  Remedies

Because it is difficult, if not impossible, to define precisely what Pickens may and may not do with her failure-to-assist theory of the case, or other claims that may have some overlap with the current formulation of her negligence claim, I do not believe it is appropriate for me to order coercive sanctions designed to compel her to dismiss any aspect of her case. I will thus deny that aspect of the Motion.

I also will deny the Debtor's request for compensatory sanctions to the extent that they relate to the assault and battery claims. The Debtor may be entitled to compensatory sanctions arising from Pickens' pursuit of the negligence claim from February 14 to the present, as well

as any continued prosecution of that claim in its current form. Because of the impending trial date, the parties did not address the "fair ground of doubt" standard as it relates to this claim in detail, and the Debtor has not identified a particular amount of attorneys' fees or other harm relating specifically to the negligence claim. I believe it would be most appropriate to consider these issues after the conclusion of the proceedings, when the parties will be in a position to address any discharge violations that have yet to occur—though I have no reason to believe that any will—and to address the Debtor's arguments and Pickens' defenses with full knowledge of the outcome of the state-court case and the adversary proceeding. I will, therefore, deny the motion for compensatory sanctions relating to the negligence claim, without prejudice to the Debtor's renewal of the request on regular notice after the conclusion of the proceedings.

Finally, I will deny Pickens' motion for Rule 9011 sanctions. Pickens has not complied with the "safe harbor" provision of the rule, which requires the movant to serve the motion on opposing counsel, separately from other requests, at least 21 days before filing it with the court. Fed. R. Bankr. P. 9011(c)(1)(A). The rule includes an exception for an argument that a petition has been filed improperly, but not one for emergency or expedited proceedings. *See In re Chan*, 556 B.R. 61, 67 (Bankr. E.D.N.Y. 2016). In any event, I find that the Motion was not filed for an improper purpose, and neither it nor its supporting memorandum contained contentions that are frivolous, unwarranted by law, or otherwise improper under the rule. Several of the Debtor's arguments have proved successful, and the balance addressed a complex area of the law with supporting authorities. Sanctions are thus unwarranted.

### IV.   Conclusion

For these reasons, I will enter a separate order clarifying the scope of the discharge injunction in this case, denying the Debtor's Motion, without prejudice in part, and denying Pickens' cross-motion for sanctions.

Dated: March 24, 2023
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

Copies to:

**Jesse Dakota Yount**
4068 Tera Bera Dr.
Florissant, MO 63034

**David Nelson Gunn**
The Consumer Law Center of St. Louis, LLC
2249 S. Brentwood
Saint Louis, MO 63144

**Robert E. Eggmann**
Carmody MacDonald P.C.
120 South Central Avenue, Suite 1800
Clayton, MO 63105

**E. Rebecca Case**
7733 Forsyth Blvd.
Suite 500
Saint Louis, MO 63105

**Office of US Trustee**
111 S Tenth St, Ste 6.353
St. Louis, MO 63102